UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **CORDELL SANDERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )    No.: 16-cv-1366-JBM |
| | ) |
| **WARDEN MICHAEL MELVIN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### ORDER

On September 29, 2016, the *pro se* Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs and inhumane conditions of confinement at the Pontiac Correctional Center ("Pontiac"). Plaintiff was initially granted leave to proceed *in forma pauperis* ("IFP"), without payment of the filing fee. On March 22, 2017, the Court conducted a merit review of the complaint, noting that Plaintiff had accumulated three strikes under 28 U.S.C.§1915(g). As a result, Plaintiff could not proceed *in forma pauperis* unless he established that he was "under imminent danger of serious physical injury." In its merit review order, the Court found that Plaintiff had not sufficiently alleged imminent danger of serious physical injury as to his claims that Defendants would not allow him to possess an asthma inhaler, that he was held behind a Plexiglas-covered perforated door, and that he was "required" to self-mutilate in order to receive mental health treatment. The Court revoked Plaintiff's IFP status and ordered him to pay the full filing fee within 21 days. When he did not do so, the complaint was dismissed.

Plaintiff appealed to the Seventh Circuit Court of Appeals which noted "Cordell Sanders has been in solitary confinement at Pontiac Correctional Center for eight years, and the prison plans to keep him there for another ten…He contends that solitary confinement not only is

1

injurious by itself but also causes prisoners to lose the benefit of mental-health care, and that only self-mutilation (or a credible threat of self- mutilation) restores that care. *Sanders v. Melvin*, 873 F.3d 957, 959, 961 (7th Cir. 2017) ("*Melvin*"). The Seventh Circuit vacated the dismissal of the complaint, finding that Plaintiff had sufficiently pled imminent danger as to this claim, only, affirming the trial court on all other issues.

Counsel was appointed to represent Plaintiff on appeal and continues to represent him on remand. On August 28, 2018, with leave of Court, Plaintiff filed an amended complaint. Defendants have filed motions for summary judgment which have not yet been reviewed by the Court. On March 25, 2020, Defendants Jeffreys, Kennedy, Marano and Melvin filed a Motion for Sanctions pursuant to Fed.R.Civ.P. 11(c)(2). Defendants assert that this case must be dismissed for Plaintiff's fraud in his pleadings. [ECF 197]. Plaintiff has filed a response to which Defendants have replied. For the reasons indicated herein, Defendants' Motion is GRANTED.

## MATERIAL FACTS

In his initial complaint, Plaintiff revealed that he had been diagnosed as seriously mentally ill ("SMI"), with schizoaffective disorder, and intermittent explosive disorder which causes him to have angry outbursts. Plaintiff alleged that he has been wrongfully held in disciplinary isolation for eight years due to the outbursts associated with his mental illness. Among his claims were that inmates in segregation were denied mental health treatment unless they "self mutilate, overdose on pills, hang themselves, falsely declare to be suicidal. In order to speak with them about non-suicidal issues." [ECF 1 at 7, 9]. Plaintiff alleged that due to lack of treatment he engaged in self-harm, and attempted suicide on October 27, 2015, July 24, 2016, and July 27, 2016.

The issue identified on remand was whether Plaintiff, a segregation inmate, was denied mental health treatment and the only way he could receive treatment was to engage in self-harm. The Court did not allow Plaintiff, a 3-striker proceeding under the imminent danger exception to § 1915(g), to go forward on his claim that long-term segregation was generally injurious to his mental health, finding:

> Mental deterioration, however, is a psychological rather than a physical problem. Physical problems can cause psychological ones, and the reverse, but the statute supposes that it is possible to distinguish them. A claim of long-term psychological deterioration is on the psychological side of the line. Prisoners facing long-term psychological problems can save up during that long term and pay the filing fee.

*Id*. at 959-60.

The issue on remand was limited to the physical harm Plaintiff had allegedly sustained due to lack of mental health treatment:

> But Sanders advances a stronger contention: that his mental condition (the prison itself classifies Sanders as "seriously mentally ill") disposes him to self-harm. He asserts that he has twice tried to commit suicide and at least once engaged in self-mutilation. According to his complaint, the mental-health staff at Pontiac ignores the problems of inmates in solitary confinement unless they engage in self-harm. Cutting off an ear or other self-mutilation is a form of physical injury; that the would-be plaintiff inflicts the injury himself, and does so because of mental problems, does not make the harm less "physical" or less "serious."

*Id*. at 960. As noted, the Appellate Court found that Plaintiff's allegations of serious physical harm were to be treated as true at the pleadings stage even though the harm was self-inflicted. The Appellate Court noted, however, that the trial court was not required "to accept whatever a prisoner says" and if his claims were challenged or seemed "fishy," Plaintiff could be required to support his claims by affidavit, at a hearing, or in response to a rule 12 (b)(1), (b)(2) or (b)(3) motion. *Id*. at 961-62.

While Defendants' challenge to the allegations has been filed as a Motion for Sanctions, Plaintiff has had an opportunity to respond and to provide supporting documentation, so the form of the challenge does not appear relevant. This particularly, as Judge Easterbrook ordered: "if it turns out [Plaintiff] has lied in an effort to manipulate the judge, the case may be dismissed with prejudice as a sanction even if he comes up with the $400." *Melvin*, 873 F.3d at 961-62 (internal citations omitted).

## ANALYSIS

Defendants assert that after obtaining written discovery and reviewing Plaintiff's deposition testimony, it is clear that Plaintiff lied in his initial, *pro se* complaint. They note that Plaintiff engaged in acts of self-harm on October 27, 2015, July 24, 2016 and July 27, 2016; and claims that he did so as his mental illness was untreated, and that this was the only way to get treatment. Defendants provide records, however, to establish that Plaintiff was seen by mental health staff on 17 occasions in 2015, both before and after the October 27, 2015 incident and 27 times in 2016, both before and after the July 24, and July 27, 2016 incidents. In his deposition, Plaintiff admitted to these encounters and admitted that he was able to request a crisis team if he was feeling suicidal or entertaining thoughts of self-harm.

Plaintiff claims, however, that the allegations of the initial complaint complained of inadequate treatment, not that he received no treatment at all. Plaintiff alleges that he had pled, in part, that if he did not receive "individual and/or group psychotherapy, specialized psycho-educational groups, etc." it would lead to more suicide attempts "and/or actual suicide." [ECF 1 at 5]. Plaintiff asserts that his records document that he did not receive any treatment in April, May, June, July, or August 2016, or "individual and/or group psychotherapy" or "specialized

4

psychoeducational groups," during the relevant period. He claims, therefore, that his claimed lack of mental health treatment is supported in the record.

This case is not proceeding, however, as to the sufficiency of Plaintiff's mental health treatment as this was not the issue on remand. The Appellate Court specifically determined that any "mental deterioration" which flowed from lack of treatment was a psychological problem, not a physical problem necessary to establish the imminent danger exception to § 1915(g). The issue on remand was whether Plaintiff was forced to harm himself or credibly threaten harm, in order to receive any mental health treatment. *See Melvin*, 873 F.3d at 961-62, characterizing Plaintiff as alleging that prisoner in segregation "lose the benefit of mental-health care" which is only restored upon self-mutilation or a credible threat of self- mutilation. The District Court was instructed to proceed on this issue and advised that, if it were revealed that the allegations of imminent danger were falsely made, it might dismiss the case, even if Plaintiff were to pay the filing fee.

Defendants have produced 100 pages of mental health progress notes to support that Plaintiff received mental health treatment around the times of his October 27, 2015, July 24 and July 27, 2016 incidents of self-harm. These document that in 2015, Plaintiff was seen by staff on January 26, February 23, May 3, July 7, July 8, July 26, September 9, October 27, October 28, October 30, November 4, November 5, November 6, November 12, December 3, December 10 and December 22. In 2016, Plaintiff was seen by staff on January 13, January 25, February 14, February 25, March 26, March 29, May 17, June 10, July 19, July 25, July 26, July 27, July 28, July 29, July 30, July 31, August 2, August 4, September 8, October 20, November 23, November 29, December 13, December 27, December 29, and December 30. Most of these interactions are documented as five-minute "sessions." [ECF 200]. Plaintiff also had five-page

individualized mental health treatment plans formulated on May 26, 2015, August 3, 2015, and October 20, 2016. [ECF 199]. These interventions would appear to refute Plaintiff's claim that he only received mental health treatment when he harmed himself or credibly threatened self-harm.

Plaintiff asserts, however, the allegations of the original complaint are no longer at issue as, on August 28, 2018, with leave of Court, Plaintiff amended his complaint. Plaintiff claims that as the amended complaint is the operative pleading, any examination of the initial complaint is unwarranted. "Once an amended pleading is interposed, the original pleading no longer performs any function in the case." *Wellness Cmty.- Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed. 1990)).

In response, Defendants assert that the amended complaint, too, alleges that mental health care was not provided to inmates in segregation unless they engaged in self-harm. Defendants cite Count IV of the amended complaint which claims that acting pursuant to policy "mental health care providers ignore prisoners' requests for mental health treatment until prisoners self-mutilate or attempt suicide…" [ECF 69 ¶¶ 111-112]. This appears to be consistent with the Appellate Court's interpretation of the original allegation: "[a]ccording to his complaint, the mental-health staff at Pontiac ignores the problems of inmates in solitary confinement unless they engage in self-harm." *Id*. at 960.

It is uncontroverted that Plaintiff engaged in three incidents of self-harm: October 15, 2015; July 24, 2016; and July 27, 2016. The mental health records document, and Plaintiff admits, that he was seen 44 times between 2015-2016. Plaintiff was clearly seen far more than on those three occasions when he engaged in self-harm. Here, it is demonstrably clear that self-harm

6

was not a prerequisite to Plaintiff receiving mental health treatment. As a result, the amended complaint, which repleads this claim, fails to cure the fraud.

Plaintiff makes the further claim that Defendants' Motion for Sanctions was not timely filed. Plaintiff notes that fact discovery closed on June 28, 2019 and Plaintiff was deposed on July 10, 2019. Plaintiff assets that Defendants filed their motion more than one year after producing the relevant mental health records and seven months after Plaintiff's deposition. A motion for sanctions is to be filed "as soon as practicable after discovery of a Rule 11 violation." *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992). The reasonableness of the timing of a Rule 11 motion "is necessarily dictated by the specific facts and circumstances in a given case." *Id.* at 152 (finding timely a Rule 11 Motion filed two years after the movant had been dismissed from the case but prior to entry of a final judgment).

As Defendants note, neither the Seventh Circuit nor the Federal Rules of Civil Procedure provide a bright line rule for determining the timeliness of a motion for sanctions. "Ordinarily the [Rule 11] motion should be served *promptly after the inappropriate paper is filed,* and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery." *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir.1997) (emphasis in original). In discussing the timeliness issue, *Ridder* considered the "safe harbor" provision of Rule 11(c)(2) which affords the non-moving party 21 days in which to withdraw or correct the allegedly sanctionable claim. *Ridder* identified this as providing the outside parameter for filing a Rule 11 motion, stating that as the non-movant has 21 days in which to cure, "a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." *Id.* at 295.

In *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1028 (7th Cir. 1999), the court characterized a challenge to the timing of a Rule 11 motion as mirroring the "the common law doctrine of laches." As a result, the party contesting the timing was required to prove that the alleged delay "unreasonably prejudiced" him. There, the court found that as Rule 11 gave the non-movant an opportunity to amend or withdraw the sanctionable pleading, the party could not establish unreasonable prejudice.

Defendants assert that they proceeded as soon as practical after Plaintiff's deposition and the February 2020 completion of fact and expert discovery. While Plaintiff claims otherwise, he offers no caselaw to support that a Rule 11 motion filed after the completion of discovery and prior to a summary judgment finding is untimely. Furthermore, Plaintiff fails to establish unreasonable prejudice as he was given notice and 21days in which to withdraw the sanctionable claim that "mental health care providers ignore prisoners' requests for mental health treatment until prisoners self-mutilate or attempt suicide…" Here, Plaintiff did not avail himself of the opportunity, despite the record which demonstrates that Plaintiff, a segregation inmate, received some care on a frequent basis, though perhaps, not the care he wanted. Here, it is clear that Plaintiff's requests for mental health treatment did not, as alleged, go ignored unless he self-mutilated or attempted suicide.

Plaintiff asserts, further, that sanctions are not warranted under with Rule 11 or the IFP statute. Plaintiff characterized Defendants' motion as "unsupported" and suggests that the challenged allegation was merely "inaccurate." Here, however, Plaintiff has plainly pled that he was not provided mental health care unless he harmed himself. This is clearly belied by the record and represents far more than inaccuracy. Plaintiff, a prolific litigator, was aware that he could not proceed IFP absent allegations of imminent danger of serious physical harm. It appears

that Plaintiff made such unsupported allegations so as to circumvent the 3-strikes rule, and reiterated that claim in his amended complaint. In so doing, he lied in his pleadings.

The Court has the "inherent authority to punish fraud on the court…" *Ayoubi v. Dart*, 640 Fed. Appx. 524, 527 (7th Cir. 2016). In *Ayoubi*, the plaintiff was proceeding on a claim of excessive force and filed various motions falsely claiming that he was denied access to the law library. When this was determined to be untrue, the court dismissed the case as a sanction. The Seventh Circuit upheld the dismissal, finding "a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it…" *Id*. at 528. The facts at issue here are more egregious as, while Ayoubi filed falsehoods in furtherance of his claims, Plaintiff's pleadings themselves are based on falsehoods.

The Seventh Circuit has reminded this Court that it might dismiss Plaintiff's case with prejudice if it determined that Plaintiff "has lied in an effort to manipulate the judge" even if he paid the $400 filing fee. Here, Plaintiff falsely pled in both his initial and amended complaints. As a result, this case is DISMISSED with prejudice.

**IT IS THEREFORE ORDERED:**

1) The Motion for Sanctions of Defendants Jeffreys, Kennedy, Marano and Melvin [ECF 197], is GRANTED. This case is DISMISSED with prejudice. All internal deadlines and pending matters are rendered MOOT. The clerk is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2) If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal in forma pauperis should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R.

App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.


| 9/24/2020 | \_\_\_\_\_s/Jonathan E. Hawley\_\_\_\_\_ |
|---|---|
| DATE | JONATHAN E. HAWLEY |
|  | UNITED STATES MAGISTRATE JUDGE |